```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 HUMBERTO ANTONIO NUNEZ,

                        Plaintiff,
                                                   MEMORANDUM & ORDER
                                                   22-CV-4211(EK)(MMH)
            -against-

 ERIC ADAMS, ERIC GONZALEZ, ISMAEL
 ZAYAZ, and J.P. MORGAN CHASE,

                        Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Humberto Nunez filed this suit against the mayor of New York, the Kings County District Attorney, a New York City Police detective, and JPMorgan Chase Bank. Proceeding *pro se,* he alleges that he was discriminated against on the basis of his race when Chase declined to honor his power of attorney over his incapacitated neighbor, Rose Kane. JPMorgan Chase now moves to dismiss his claims against it under Rule 12(b)(1) and 12(b)(6).

## I. Background

**A. Facts**

Rose Kane granted Nunez a power of attorney to manage her finances in 2018. Complaint, ECF No. 1, ¶ 1-2. She entered into an assisted care facility in Brooklyn the next year. *Id.* ¶ 22. Judge Leon Ruchelsman of the New York State Supreme Court, Kings County, vacated "[a]ny and all Powers of Attorney

previously executed by ROSE KANE" by court order dated December 16, 2019.  *In the Matter of Rose Kane, An Incapacitated Person*, Index No. 100277/2018, Supreme Court of the State of New York, County of Kings.  Nunez alleges that he never received notice from the court that his power of attorney was vacated.  Compl. ¶ 24.

In either 2019, *see id*. ¶ 4, or 2021, *see id*. ¶ 24, JPMorgan Chase ("Chase") notified Nunez "that his durable power of attorney was terminated by a court order."  *Id*. ¶ 24.

After Nunez leased Kane's property to a third-party — presumably relying on his authority under the power of attorney — he was arrested for identity theft.  *Id*. ¶ 22, 26, 27; *see* Index No. 71953-22/002, Supreme Court of the State of New York, County of Kings, Criminal Court.  That criminal case is still pending.  *See id.*; ECF No. 10, at 1.

**B.   Procedural Posture**

Nunez makes three claims against four defendants.  His third claim is alleged only against the municipal defendants and does not implicate Chase.  Compl. ¶¶ 37-39.  Chase has moved to dismiss his first and second claims against it, which assert violations of his constitutional rights under Sections 1981, 1985, and 1986, as well as for intentional infliction of emotional distress.  Nunez has made clear that he does not seek leave to amend and "wishes to proceed with the complaint."  ECF

2

No. 16, at 1.  He seeks compensatory and punitive damages.  Compl. ¶ 40-42.

## II.  Legal Standard

On a motion to dismiss, "the court's task is to assess the legal feasibility of the complaint."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).[1]  In doing so, the court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  Pro se complaints are "held to less stringent standards" than pleadings drafted by attorneys, and the court will read a pro se complaint liberally and interpret it as raising the strongest arguments it suggests.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Still, a pro se plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Thus, to survive a motion to dismiss, the complaint must plead sufficient "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

"A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

Nunez alleges that the termination of, and refusal to recognize, his power of attorney was "racially discriminatory." Compl. ¶ 32. Chase argues both that Nunez lacks standing to bring his claims and that he fails to state a claim upon which relief can be granted. Defendant's Memorandum of Law ("Def's Mem."), ECF No. 18, at 8. Although Nunez does have standing, his claims against Chase are nonetheless dismissed pursuant to Rule 12(b)(6).

**A.   Standing**

Chase argues that Nunez does not have Article III standing to sue on behalf of Rose. To establish standing, a plaintiff must establish three elements: (1) injury-in-fact, meaning "an actual or imminent" harm to a "legally protected

4

interest"; (2) causation of the injury; and (3) redressability. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).

Here, Chase argues that Nunez has not met the "injury-in-fact" element. It argues, first, that a power-of-attorney does not confer standing to sue in the holder's own right, Def's Mem. at 12 (citing *Cortland St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 420 (2d Cir. 2015)), and second, that the power of attorney had been terminated prior to the commencement of the suit, leaving Nunez without standing to sue under it anyway. Def's Mem. at 13-14 (citing *Dennis v. JPMorgan Chase & Co.*, 342 F.Supp.3d 404, 414 (S.D.N.Y. 2018)).

Both arguments misunderstand the nature of Nunez's claims. Read liberally, he is not asserting Rose's rights pursuant to the power of attorney and suing for her injury. Rather, he is asserting his own right to be free from "racial discrimination [that] impairs an existing contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *see also* 42 U.S.C. § 1981(b) (extending the terms of the statute to apply to the "termination of contracts"). A "written power-of-attorney agreement is a formal contract." *McGraw-Hill Global Education Holdings, LLC v. Mathrani*, 295 F.Supp.3d 404, 412 (S.D.N.Y. 2017).

Nunez alleges that his power of attorney was terminated by court order pursuant to a wide-ranging conspiracy

5

involving Chase, and that it was terminated because he is "a[n] Indigenous Hispanic."  *See* Compl. ¶ 9, 18, 32-33.  Interpreting these allegations liberally, he adequately alleges that his rights under the power of attorney were terminated as a result of Chase's actions.  *See also Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) (holding that "discrimination itself, by perpetuating archaic and stereotypic notions or by stigmatizing members of the disfavored group as innately inferior and therefore less worthy participants in the political community, can cause serious non-economic injuries").

**B.  Discrimination**

Chase next argues that Nunez fails to state a claim against it under Section 1981.  In order to state a discrimination claim under Section 1981, "plaintiffs must sufficiently allege that defendants acted with discriminatory intent."  *Burgis v. New York City Dept. of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015).  That requires alleging circumstances that "give rise to an inference of unlawful discrimination." *Id*. at 69.  For example, in *Burgis*, where the plaintiffs alleged that they were passed over for promotions due to their race, the complaint did not sufficiently plead discriminatory intent because it failed to reference "specific statements or

6

individual circumstances that suggest discriminatory treatment." *Id*.

Here, Nunez fails to allege specific statements, individual circumstances, or overwhelming statistical evidence supporting his discrimination claim. His complaint is conclusory and internally contradictory. The sole factual allegation he makes as to Chase is that the bank informed him that his "Power of Attorney was terminated by the Courts via a Court Order." Compl. ¶ 4, 24. Apart from that, he simply asserts — with no supporting factual allegations — that Chase "has a well[-]established pattern and practice of discriminating against African-American customers and/or those seeking to do business with defendants, including termination of contracts." *Id*. ¶ 18.

But Nunez does not offer any pattern evidence. Moreover, he makes no connection — whether through specific statements or otherwise — between Chase's alleged pattern of discrimination and the state Supreme Court's decision to vacate his power of attorney.[2] Even if he adequately alleged (rather than simply asserting) that the court's decision was based on his race, he would still need to allege facts showing that Chase participated in or acted in furtherance of the court's decision.

---

[2] As noted above, Nunez also alleges that he is an "Indigenous Hispanic" rather than African-American.

7

*See Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993). Absent said allegations, Nunez's "complaint fails to offer more than conclusory allegations that he was discriminated against because of his race." *Id*. at 1088 (affirming the dismissal of a *pro se* plaintiff's claims under Sections 1981, 1985, and 1986).

Nunez's Section 1981 claim is therefore dismissed. Because claims under Sections 1985 and 1986 fail absent an underlying constitutional or statutory violation, Nunez's claims against Chase under those statutes are dismissed as well. *See Great Am. Fed. Saving & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979) (explaining that Section 1985 requires an underlying violation of federal right); *Gagliardi v. Vill. Of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (noting that a Section 1986 claim must be premised on "a viable conspiracy claim under section 1985").

**C.   Intentional Infliction of Emotional Distress**

Nunez also fails to state a claim for intentional infliction of emotional distress. Under New York law, "intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996). "New York

8

sets a high threshold for conduct that is extreme and outrageous enough to constitute intentional infliction of emotional distress." *Id*. The plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).

Nunez alleges that Chase notified him that it declined to recognize his power of attorney after a state court revoked it. Compl. ¶ 24. Compliance with a court order is not sufficiently outrageous or extreme conduct. *See, e.g., Stuto*, 164 F.3d at 827-28 (collecting cases in which the alleged conduct was insufficiently outrageous). This claim, too, is therefore dismissed.

## IV. Conclusion

Chase's motion to dismiss is granted, and all of Nunez's claims against it are dismissed without prejudice.[3]


SO ORDERED.

                                                                 /s/ Eric Komitee  
                                                          ERIC KOMITEE  
                                                          United States District Judge


Dated:    February 29, 2024  
          Brooklyn, New York

---

[3] Chase requests that "leave to amend [] be denied." Def's Mem. at 20. But Nunez has not yet sought leave to amend. Recognizing that "[g]enerally, before a court dismisses a *pro se* complaint with prejudice, the court should afford the plaintiff the opportunity to amend at least once," *Owoyemi v. Credit Corp Solutions Inc.*, 596 F.Supp.3d 514, 521 (S.D.N.Y. 2022), the court declines to dismiss with prejudice at this stage.